**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., 855 South Mint Street Charlotte, NC 28202,<br><br>　　　Movant,<br><br>v.<br><br>THE LAW OFFICES OF PETER T. NICHOLL, 36 South Charles Street, #1700 Baltimore, MD 21201,<br><br>　　　Respondent. | Misc. Case No. 21-151<br><br>Original Proceeding:<br>*Honeywell International Inc. v. North American Refractories Company Asbestos Personal Injury Settlement Trust*, Adv. Proc. No. 21-2097 (Bankr. W.D. Pa.) |

**MEMORANDUM OF LAW IN SUPPORT OF
HONEYWELL INTERNATIONAL INC.'S MOTIONS TO COMPEL
AND TRANSFER TO THE BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

# TABLE OF CONTENTS

NATURE OF THE DISPUTE ............................................................................................................1

LEGAL STANDARD......................................................................................................................5

      A.      Motion To Compel..........................................................................................5

      B.      Motion To Transfer........................................................................................6

ARGUMENT..................................................................................................................................7

I.      The Requested Documents Are Relevant ......................................................................7

      A.      Subpoena Requests 1 and 2............................................................................7

      B.      Subpoena Requests 3 and 4............................................................................9

II.     Nicholl Will Not Suffer An Undue Burden ....................................................................9

III.    Honeywell's Motion To Compel Should Be Transferred To Judge Agresti ......................13

IV.    The Court Should Order Nicholl To Expedite Its Production Of Documents...................15

CONCLUSION.............................................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Braden*,
  344 F. Supp. 3d 83 (D.D.C. 2018) ................................................................................. 6

*BuzzFeed, Inc. v. U.S. Dep't of Just.*,
  318 F. Supp. 3d 347 (D.D.C. 2018) ............................................................................. 11

*In re Caesars Ent. Operating Co.*,
  558 B.R. 156 (W.D. Pa. 2016) ..................................................................................... 14

*Coal. for App Fairness v. Apple, Inc.*,
  2021 WL 3418805 (D.D.C. Aug. 5, 2021) ............................................................. 13, 14

*Duck v. S.E.C.*,
  317 F.R.D. 321 (D.D.C. 2016) ..................................................................................... 14

*Google, Inc. v. Digital Citizens Alliance*,
  2015 WL 4930979 (D.D.C. July 31, 2015) ............................................................. 14-15

*Judicial Watch, Inc. v. Valle Del Sol, Inc.*,
  307 F.R.D. 30 (D.D.C. 2014) ......................................................................................... 6

*Lamaute v. Power*,
  339 F.R.D. 29 (D.D.C. 2021) ......................................................................................... 5

*Lipman v. Antoon*,
  284 F. Supp.3d 8 (D.D.C. Jan. 3, 2018) ....................................................................... 15

*Mazer v. Frederick Mut. Ins. Co.*,
  2021 WL 311231 (M.D. Pa. Jan. 29, 2021) ................................................................... 5

*McGehee v. U.S. Dep't of Just.*,
  362 F. Supp. 3d 14 (D.D.C. 2019) ............................................................................... 16

*In re NARCO*,
  542 B.R. 350 (Bankr. W.D. Pa. 2015) ...................................................................... 3, 14

*Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v Porter*,
  2012 WL 628493 (D. Md. Feb. 24, 2012) ................................................................ 7, 13

*Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*,
  322 F.R.D. 1 (D.D.C. 2017) ..................................................................................... 9, 10

*Pietrangelo v. Refresh Club, Inc.*,
    2021 WL 1209300 (D.D.C. Mar. 31, 2021), *aff'd*,
    2021 WL 2156504 (D.D.C. May 26, 2021)..................................................................9

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    2010 WL 11613859 (D.D.C. Sept. 9, 2010)..............................................................12

*Sheppard v. Liberty Mut. Ins. Co.*,
    2017 WL 318470 (E.D. La. Jan. 23, 2017)................................................................7

*Stati v. Republic of Kazakhstan*,
    2020 WL 3259244 (D.D.C. June 5, 2020).............................................................5, 6

*Strike 3 Holdings, LLC v. Doe*,
    2021 WL 4965567 (D.D.C. Oct. 26, 2021) .......................................................10, 11

*Vail Lopez v. Timeco Inc.*,
    2017 WL 6061616 (D.D.C. Jan. 17, 2017).................................................................6

*Willis v. Buffalo Pumps, Inc.*,
    2014 WL 2458247 (S.D. Cal. June 2, 2014)..............................................................7

*Wultz v. Bank of China, Ltd.*,
    304 F.R.D. 38 (D.D.C. 2014).............................................................................13, 15

**Rules**

Fed. R. Civ. P. 26(b)(1).............................................................................................. *passim*

Fed. R. Civ. P. 26, 1983 adv. comm. note ........................................................................11

Fed. R. Civ. P. 37(a)(1)........................................................................................................1

Fed. R. Civ. P. 45(f) ..............................................................................................1, 5, 6, 15

Fed. R. Civ. P. 45(g) ............................................................................................................1

Fed. R. Bankr. P. 7026.........................................................................................................5

Fed. R. Bankr. P. 9016 ........................................................................................................5

**Other Authorities**

Press Release, Dep't of Justice, Justice Department Files Statement of Interest
    Urging Transparency in the Compensation of Asbestos Claims
    (Dec. 28, 2020) .................................................................................................2, 10

Honeywell International Inc. ("Honeywell") respectfully moves (a) pursuant to Rule 45(g) and Rule 37(a)(1) of the Federal Rules of Civil Procedure to compel compliance with the "Subpoena" (Ex. 1)[1] issued to the Law Offices of Peter T. Nicholl ("Nicholl") from the United States Bankruptcy Court for the Western District of Pennsylvania in connection with *Honeywell International Inc. v. North American Refractories Company Asbestos Personal Injury Settlement Trust*, Adv. Proc. No. 21-2097 (Bankr. W.D. Pa.) (the "2021 NARCO Litigation"), and (b) pursuant to Fed. R. Civ. P. 45(f) to transfer the Motion to Compel to Bankruptcy Judge Thomas P. Agresti in the Bankruptcy Court for the Western District of Pennsylvania, who is presiding over the 2021 NARCO Litigation

## NATURE OF THE DISPUTE

Honeywell's Subpoena seeks documents that are directly relevant to its pending action against the North American Refractories Company ("NARCO") Asbestos Personal Injury Settlement Trust ("Trust"). The Trust was created some years ago as part of the court-approved NARCO plan of reorganization to pay claims of those injured by NARCO asbestos-containing products. Ex. 2 ("Compl.") ¶ 2. The Trust is only permitted to pay claims, however, if they are supported by "competent" and "credible" evidence that the claimants were exposed to asbestos products manufactured by NARCO. *Id.* ¶ 62. Honeywell, a former parent of NARCO, has a unique and continuing interest in ensuring that the Trust follows these directives—Honeywell funds the Trust on an evergreen basis. *Id.* ¶ 2. Honeywell filed the 2021 NARCO Litigation to protect this interest and stop the Trust from paying millions of dollars of claims based on "form" affidavits that are not "competent" or "credible" evidence. *Id.* ¶¶ 1, 214-22.

---

[1] References to "Ex. __" refer to exhibits to the Declaration of Guyon H. Knight ("Knight Decl."), filed concurrently herewith.

The largest filer of non-credible form affidavits, by far, is the target of this Subpoena—Nicholl—who is mentioned in the Complaint (by name or as "Form Firm 1") twenty-nine times. To date, the Trust has already paid Nicholl's clients more than $85 million—making Nicholl the firm that has received the most payments from the Trust. Declaration of Yelena Bekker ("Bekker Decl.") ¶¶ 5-6. Nicholl received these payments based on form affidavits, which were signed by all (or virtually all) of the thousands of Nicholl claimants to establish their alleged exposure to asbestos-containing products manufactured by NARCO. Compl. ¶ 92. A form affidavit uses the same formulaic, boilerplate language to describe a claimant's exposure—and recollection of that exposure—to NARCO's asbestos-containing products. *Id.* ¶ 89.

Nicholl's form affidavits are not "credible" or "competent" evidence, however, as it is not possible that thousands of claimants—working at different sites, in different jobs, in different industries, and in different time periods—all were exposed to NARCO asbestos-containing products in the same precise manner and all had the very same recollection of that exposure (from as much as fifty years ago), including of the packaging the product came in and the trade name of the product. *Id.* ¶¶ 90, 92-94. Indeed, in its findings of fact on Plan Confirmation in 2006, the Bankruptcy Court found that only 2.6% of claimants could by then even identify a specific NARCO product to which they were exposed. Ex. 3, ¶ 73. By contrast, almost *100%* of the claimants represented by Nicholl, totaling in the thousands, incredulously recall the specific NARCO product they were allegedly exposed to. Compl. ¶ 92. The submission of inaccurate exposure evidence like this is, according to the Department of Justice, a problem being faced in the tort and asbestos trust system generally. *See* Press Release, Dep't of Justice, Justice Department Files Statement of Interest Urging Transparency in the Compensation of Asbestos Claims (Dec. 28, 2020) ("'In recent years, numerous courts and commentators have recognized

2

that many asbestos claims are based on inaccurate or even fraudulent information …. That lack of transparency in the compensation of asbestos claims has been a *significant problem*.'") (emphasis added), *available at* https://tinyurl.com/DOJAsbestos.

The 2021 NARCO Litigation is the *second* litigation that Honeywell has brought addressed to the Trust's policy of paying claimants who rely on form affidavits, and paying on Nicholl form affidavits in particular. In 2015, Honeywell sought a preliminary injunction against the Trust before the same Judge that is presiding over the current litigation. Honeywell sought to enjoin, among other things, the Trust's payment on form affidavits, specifically the Nicholl forms as well as those submitted from several other firms. Compl. ¶ 95. After some encouragement from Judge Agresti, the Trust "voluntary[ily] agree[d] to stop accepting … 'form' affidavits as sufficient to support a claim." *See In re NARCO*, 542 B.R. 350, 356 (Bankr. W.D. Pa. 2015). Several months later, the Trust published directives to its claims processor memorializing the new prohibition and stating that form affidavits present "competence and/or credibility concerns." Compl. ¶ 108. The Trust's general counsel later acknowledged in writing that the concern with form affidavits is that clients "blindly will sign" them even if they do not have the recollection that the boilerplate exposure language attributes to them. *Id.* ¶ 104.

Honeywell was forced to initiate the pending litigation—the 2021 NARCO Litigation—in part because the Trust reversed its form policy: it reverted to allowing form affidavits. *Id.* ¶ 113. The biggest beneficiary of this stunning reversal has been Nicholl, whose claimants were paid over $46 million in the last two years alone (Bekker Decl. ¶ 4), based on the very same form affidavits that the Trust previously would not credit as credible or competent. The Trust made this policy reversal despite Honeywell's having produced evidence to the Trust—from an asbestos litigation relating to "Bendix" brake products in which Honeywell is a defendant—showing that many of

3

these same NARCO claimants (represented by the same firm) filed interrogatories in that litigation where they failed to claim any exposure to NARCO asbestos-containing products despite being asked for all other asbestos exposures and despite these claimants listing other asbestos manufacturers and other brand names. Compl. ¶¶ 118, 141-50. Suddenly, these claimants had no recollection of their NARCO exposures despite the quite detailed boilerplate formulaic affidavits they each signed, often at around the same time. *Id.* ¶ 135-40. Though the Trust initially confronted the Nicholl firm with inconsistent evidence submitted by many of its claimants, which the Trust said was "troubling" and "raise[d] questions as to the credibility and competence of those affidavits, the Trust ultimately accepted Nicholl's excuses for these omissions. *Id.* ¶ 146.

Honeywell's new Complaint asks the Court to "declare that form affidavits" violate the Trust's governing documents, and to "enjoin the Trust from accepting them as credible and competent evidence of exposure." *Id.* ¶ 222. The evidence sought by this Subpoena is directly relevant to this claim. The evidence sought will help to prove that Nicholl's forms are not credible and that they are in fact inconsistent with allegations submitted by many of the same claimants in numerous litigations as well as to other asbestos trusts. The Subpoena does not seek other tort and trust filings of all Nicholl claimants, or even all of those that were paid by the Trust. Rather, the Subpoena seeks this information for a representative *subset* of Nicholl claimants whom the Trust paid based on their form affidavits. *See* Bekker Decl. ¶ 3. The Subpoena also seeks the documents that Nicholl provided to the Trust's auditor. Under Trust policies, those documents are not retained by the Trust or its auditor but are instead returned to the audited firm. *See* NARCO Trust Claims Audit Program, ¶ IV, *available at* https://tinyurl.com/NARCOAudit.

The Trust has a pending motion before Judge Agresti in the 2021 NARCO Litigation in which it seeks a Protective Order on the grounds that the Subpoenas Honeywell served on Nicholl

and certain other firms are not relevant. In addition, another of the subpoenaed firms recently filed a Motion to Quash a subpoena that Honeywell served on it at around the same time it served Nicholl with the Subpoena at issue herein. That subpoena seeks the same type of documents that the Nicholl Subpoena seeks. To avoid inconsistent rulings and because of Judge Agresti's long history with the two related Honeywell litigations, Honeywell also brings a Motion pursuant to Rule 45(f) to Transfer this Motion to Compel to Judge Agresti. Honeywell respectfully requests that this Court consider both this Motion to Compel and its Motion to Transfer on an expedited basis because the deadline to exchange expert reports in this case is February 9, 2021 and Honeywell will need time to process and review the documents to be produced by Nicholl.

## LEGAL STANDARD

### A.  Motion To Compel

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1).[2] "Relevance, for discovery purposes, has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Lamaute v. Power*, 339 F.R.D. 29, 34 (D.D.C. 2021) (internal quotation marks omitted); *see also Mazer v. Frederick Mut. Ins. Co.*, 2021 WL 311231, at *2 (M.D. Pa. Jan. 29, 2021) (denying motion to quash subpoena and holding "the federal rules' relevancy requirement is to be construed broadly"). The relevance standard from Rule 26 also "provides the relevance standard for Rule 45 subpoenas." *Stati v. Republic of Kazakhstan*, 2020 WL 3259244, at *4 (D.D.C. June 5, 2020).

---

[2] Although the Subpoena was issued in a Bankruptcy adversary proceeding, Rules 26 and 45 still govern the scope and enforcement of discovery and third-party subpoenas. *See* Fed. R. Bankr. P. 7026 (making Rule 26 applicable in adversary proceedings); Fed. R. Bankr. P. 9016 (making Rule 45 applicable in bankruptcy cases).

Once the moving party has shown that the documents are relevant, "the party resisting discovery then must show why discovery should not be permitted." *Vail Lopez v. Timeco Inc.*, 2017 WL 6061616, at *2 (D.D.C. Jan. 17, 2017) (internal quotation marks omitted). The "undue burden standard for Rule 45 also mirrors the standard included within Rule 26." *Stati*, 2020 WL 3259244, at *4. Thus, the Court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### B. Motion To Transfer

Rule 45 allows a court to transfer motions to enforce a subpoena to the court that issued the subpoena "if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). To determine if exceptional circumstances exist, courts consider factors such as the "complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014). These factors ultimately go to three key issues: "(1) whether the underlying litigation will be disrupted if the subpoena dispute is not transferred; (2) whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred; and (3) whether … the issuing court is in the best position to rule on the motion to compel." *In re Braden*, 344 F. Supp. 3d 83, 90 (D.D.C. 2018) (internal quotation marks and citation omitted). The party seeking the transfer bears the burden to show that "such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Judicial Watch*, 307 F.R.D. at 34.

6

# ARGUMENT

## I. THE REQUESTED DOCUMENTS ARE RELEVANT

### A. Subpoena Requests 1 and 2

These Requests seek specific documents that certain identified Nicholl claimants submitted to other trusts or exchanged with their adversaries in litigation. These Requests are not directed at all Nicholl claimants, or even to all Nicholl claimants that were paid by the Trust. They are directed to a representative subset of Nicholl claimants that were paid by the Trust. *See* Bekker Decl. ¶ 3. Moreover, the Requests are not overly broad and do not seek any and all documents provided to any asbestos trust—they are targeted to "allegations of exposure" submitted to asbestos trusts (which are typically a few pages each). Ex. 1, Sched. A at 1-2. Nor do they seek entire litigation files, privileged documents, or medical records. Rather, they seek the complaints, depositions, interrogatory responses, and affidavits claimants provided to their adversaries in the litigations. *Id.* Courts around the country have repeatedly held that this kind of information is a proper subject of discovery. *See, e.g.*, *Sheppard v. Liberty Mut. Ins. Co.*, 2017 WL 318470, at *3 (E.D. La. Jan. 23, 2017) (denying motion to quash subpoena in part and holding that "all documents that [claimant] submitted to [asbestos] bankruptcy trusts, including claim forms, supporting documentation, and supplemental information are discoverable"); *Willis v. Buffalo Pumps, Inc.*, 2014 WL 2458247, at *1 (S.D. Cal. June 2, 2014) (denying motion to quash subpoena that sought individual claimant's data); *Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v Porter*, 2012 WL 628493, at *3 (D. Md. Feb. 24, 2012) (same).

The documents sought by these two Requests are directly "relevant to" and plainly "bear on" Honeywell's claims in the 2021 NARCO Litigation. First, these Requests seek documents to demonstrate the lack of credibility of Nicholl's form affidavits and thus, to support Honeywell's claim that the Trust should not pay Nicholl claimants relying on form affidavits. The Complaint

7

squarely addresses the credibility of Nicholl's form affidavits and inconsistencies between them and other tort and trust filings that Nicholl made on the claimants' behalf in other venues. Compl. ¶¶ 92-95, 144-49. Obtaining proof of these inconsistencies from Nicholl's filings is clearly "relevant to [Honeywell's] claim" in Count 1 of the Complaint, which seeks a declaration and injunction that form affidavits submitted by Nicholl and other firms are not credible or competent. *See* Compl. ¶ 222; *see also id.*, Prayer for Relief ¶ 2; Fed. R. Civ. P. 26(b)(1). As stated in Count 1, Honeywell intends to prove that these form affidavits are not competent or credible evidence of exposure in part by showing that "claimants have submitted form affidavits that are materially inconsistent with representations they made in other litigations or in subsequent submissions to the Trust." Compl. ¶ 219. Clearly, these Requests are "relevant to" and "bear on" Honeywell's claims in this Count.

Second, the documents these Requests seek are also relevant to proving that the Trust "abuse[d] its discretion" in paying Nicholl and other claims based on form affidavits—and are continuing to abuse it by continuing to pay claims based on form affidavits. *Id.* ¶ 217. Insofar as the subpoenaed documents reveal additional inconsistencies with the boilerplate exposure allegations contained in the Nicholl form affidavits submitted to the Trust, it will buttress Honeywell's claim that the Trust should have required claimants (then and now) to submit their other tort filings before accepting their form affidavits as "credible" or "competent" evidence. *See id.* ¶ 235 (seeking an order forcing the Trust to require the submission of claimant filings). Given that the Trust's procedures authorize the Trust "to require claimants to submit materials from their other cases in the tort system" (*id.* ¶ 134), its failure to exercise that discretion before accepting the credibility of Nicholl form affidavits in the face of the red flags presented by the Nicholl's form affidavits was and is a clear abuse of that discretion.

For both of the reasons set forth above, the Subpoenaed documents easily satisfy the "broadly construed" standard of relevance that applies to a discovery request. *Pietrangelo v. Refresh Club, Inc.*, 2021 WL 1209300, at *2 (D.D.C. Mar. 31, 2021) ("When in doubt, 'relevance' for discovery purposes is broadly construed.'"), *aff'd*, 2021 WL 2156504 (D.D.C. May 26, 2021). Without question, the documents subject to Requests 1 and 2 "bear on" and are "relevant to a claim" in the Complaint.

### B. Subpoena Requests 3 and 4

Request 3 seeks information that was submitted to the Trust's auditor, who the Trust has indicated will testify at trial, presumably to defend its audits of Nicholl and other firms and its findings. Request 4 seeks information concerning Nicholl's communications with the auditor, which the auditor relied upon almost exclusively to override concerns about material inconsistencies in Nicholl's claim filings. *See* Compl. ¶¶ 156-59. This audit of Nicholl is also discussed at some length in the Complaint. *See id.* ¶¶ 151-63. Honeywell needs to obtain the documents that Nicholl gave to the auditor to cross-examine the auditor. Honeywell needs these documents from Nicholl (as opposed to the auditor) because the auditor returned to Nicholl the documents it received from it, per Trust audit procedures that provide for the auditor to return the documents (without retaining a copy) to the audited firm on the completion of the audit. *See* NARCO Trust Claims Audit Program, ¶ IV, *available at* https://tinyurl.com/NARCOAudit.

### II. NICHOLL WILL NOT SUFFER AN UNDUE BURDEN

Because the Requested Documents are plainly relevant, Nicholl bears the burden to establish that producing these materials would be unduly burdensome. *See, e.g.*, *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017). Nicholl cannot meet this threshold, as all of the Rule 26 factors weigh in favor of Honeywell. Indeed, having collected over

$85 million from the Trust to date (making it the highest paid firm) on behalf of its clients, Nicholl is hardly in a position to claim production is an "undue" burden.

First, the "issues at stake in the action" are undeniably "importan[t]." Fed. R. Civ. P. 26(b)(1). The 2021 NARCO Litigation concerns the governance of an asbestos trust that is charged with the responsibility of compensating asbestos victims who establish through credible and competent evidence that they were exposed to a NARCO asbestos-containing product. *See Strike 3 Holdings, LLC v. Doe*, 2021 WL 4965567, at *4 (D.D.C. Oct. 26, 2021) ("To determine the importance of issues … courts must consider the significance of the substantive issues, as measured in philosophic, social, or institutional terms.") (internal quotation marks and citation omitted). The importance of asbestos trust governance has also been confirmed by the federal government. Just last year, the Justice Department filed a statement of interest in a bankruptcy proceeding concerning another asbestos trust, and announced that "'[i]n recent years, numerous courts and commentators have recognized that many asbestos claims are based on inaccurate or even fraudulent information …. That lack of transparency in the compensation of asbestos claims has been a *significant problem*.'" Press Release, Dep't of Justice, Justice Department Files Statement of Interest Urging Transparency in the Compensation of Asbestos Claims (Dec. 28, 2020) (emphasis added), *available at* https://tinyurl.com/DOJAsbestos.

Second, "the amount in controversy" is considerable. Fed. R. Civ. P. 26(b)(1). The Trust has paid hundreds of millions of dollars in claims over the past eight years. *See* Compl. ¶ 212. Nicholl alone has collected more than $85 million on behalf of its clients through October 2021. Bekker Decl. ¶ 5. These significant amounts in controversy weigh in favor of disclosure. *See, e.g.*, *Oxbow Carbon*, 322 F.R.D. at 7 (granting discovery request because potential damages of $150 million is "very substantial").

Third, Nicholl has far better "access" to the "relevant information" sought than Honeywell does. Fed. R. Civ. P. 26(b)(1). The Requested Documents were not submitted to Honeywell or any party that Honeywell controls. Nor were they submitted to another party to the 2021 NARCO Litigation. By contrast, Nicholl, as the law firm that *prepared and filed* all of the requested material, either with other trusts or in litigation, is in possession of all material that is responsive to the Subpoena. *See, e.g.*, *Strike 3 Holdings*, 2021 WL 4965567, at *4 (finding proportionality factors such as informational asymmetry where the seeking party has "no way to independently access the [information]" in favor of conducting discovery).

Fourth, "the parties' resources" also weigh in favor of compelling this discovery. Fed. R. Civ. P. 26(b)(1). Nicholl has collected more than $85 *million* in payments from the Trust to claimants it represents. Bekker Decl. ¶ 5. This figure does not include the amounts Nicholl has collected on behalf of these same claimants from other asbestos trusts or in the tort system. Nicholl has the resources available to produce the documents the Subpoena seeks. *See* Fed. R. Civ. P. 26, 1983 adv. comm. note (noting the court must apply the standards of Rule 26 in an "even-handed" manner whether a party is "financially weak or affluent.").

Fifth, the information sought by the Subpoena is plainly important to "resolving the issues" in the 2021 NARCO Litigation. Fed. R. Civ. P. 26(b)(1). Indeed, it is a significant portion of the Complaint and the proof Honeywell intends to elicit to show that form affidavits (particularly those from Nicholl) are not credible or competent.

Sixth, Nicholl has not shown that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 361 (D.D.C. 2018) (assessing all Rule 26 factors and finding that the burden or expense of the proposed discovery did not outweigh its likely benefit). Honeywell has offered

to reduce the scope of its Subpoena to 1,600 claimants—which represents just a portion of the claimants represented by Nicholl who have been paid by the Trust—and reduce the scope of documents requested. Knight Decl. ¶ 2; *see* Bekker Decl. ¶ 3. But to date, Nicholl has refused to accept any of the reasonable limitations Honeywell has proposed, instead preferring to rely on its blanket objections that no documents should be produced at all. Knight Decl. ¶ 2.

Finally, Nicholl may argue that the Subpoena should be quashed because it seeks confidential documents. The Subpoena, however, seeks only information that has already been exchanged with third parties, and does not seek protected medical information. Honeywell has also negotiated with other subpoenaed firms protections to ensure that personally identifying information such as social security numbers, addresses, and dates of birth, are not produced. Knight Decl. ¶ 3. Furthermore, the bankruptcy court has already entered a robust protective order in the 2021 NARCO Litigation that will protect all documents Nicholl produces. *Honeywell v. NARCO Trust*, Adv. Proc. No. 21-2097, Dkt. 123, § 4.1 (Bankr. W.D. Pa. Nov. 18, 2021).[3] The protective order does not permit Honeywell to use the information sought by the Subpoena outside the context of the 2021 NARCO Litigation, and requires that the material be destroyed when the action concludes. *Id.* § 4.1. The protective order also includes an "attorneys' eyes only" provision to give heightened protection to particularly sensitive documents. *Id.* § 1.2. These protections are more than adequate to protect any confidential information that Nicholl may contend would be responsive to the Subpoena. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2010 WL 11613859, at *3 (D.D.C. Sept. 9, 2010) (denying motion to quash in part because disclosure would be subject "to the highly confidential provisions of the protective order issued in this case"); *see*

---

[3] *See also Honeywell v. NARCO Trust*, Adv. Proc. No. 21-2097, Dkt. 143 (Bankr. W.D. Pa. Dec. 2, 2021) (entering protective order).

*also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.*, 2012 WL 628493, at *5 (D. Md. Feb. 24, 2012) (denying motion to quash subpoena seeking asbestos claims, in part because the documents would be subject to stipulated protective order that "sufficiently address[es] … privacy concerns).

### III. HONEYWELL'S MOTION TO COMPEL SHOULD BE TRANSFERRED TO JUDGE AGRESTI

While this Court can itself grant Honeywell's Motion to Compel, Honeywell respectfully submits that Judge Agresti in the bankruptcy court is much better situated to rule on the Motion and to do so in an expedited fashion. Absent a transfer, there is a serious risk of conflicting rulings concerning the relevance of the documents sought by the Subpoena—from this Court and from the other court where Honeywell is moving to compel production under a second firm's subpoena (from which Honeywell is similarly requesting a transfer as well). The Trust has already filed a motion for a protective order before Judge Agresti, in which it challenges the relevance of Honeywell's Subpoena to Nicholl, as well as more than a dozen effectively identical subpoenas Honeywell has issued to other large filers of claims. *Honeywell v. NARCO Trust*, Adv. Proc. No. 21-2097, Dkt. 125 (Bankr. W.D. Pa. Nov, 19, 2021). Judge Agresti has already set a hearing on the Trust's motion for December 13. The "potential for inconsistent rulings should be avoided and weighs in favor of a single judicial officer deciding all of these disputes." *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014) (granting transfer of motion to quash subpoena); *see also, e.g.*, *Coal. for App Fairness v. Apple, Inc.*, 2021 WL 3418805, at *3 (D.D.C. Aug. 5, 2021) (granting transfer where "Apple has filed 'nearly identical' motions to compel" in three districts). Judge Agresti should have the opportunity to rule on Honeywell's Motion to Compel, just as he is already ruling on the Trust's motion for a protective order to avoid different courts reaching different conclusions on the relevance of the documents Honeywell seeks.

13

Furthermore, Judge Agresti's long history overseeing this dispute puts him in the best position to decide the issues raised by Honeywell's Motion. Judge Agresti presided over the 2015 evidentiary hearing, where he observed that the Trust is "unique, or at least highly unusual, among asbestos-related trusts." *In re NARCO*, 542 B.R. at 353. The documents sought by the Subpoena relate directly to issues that were the subject of the 2015 evidentiary hearing, and will be at issue in the May 2022 hearing in this action. "[W]hen a matter calls for a fact-intensive inquiry *and* another court is deeply steeped in these same facts, there is no reason to ignore that combination." *Coal. for App Fairness*, 2021 WL 3418805, at *3. The sheer size, complexity, and unique nature of the NARCO bankruptcy and 2021 NARCO Litigation thus weigh decisively in favor of transfer. *See, e.g.*, *Duck v. S.E.C.*, 317 F.R.D. 321, 325 (D.D.C. 2016) (granting motion to transfer "in light of the complex nature of the underlying action[] and the significant involvement" of the issuing court "in the action to date" that has been pending for four years).

The 2021 NARCO Litigation is also likely to be disrupted if Honeywell's Motion is not transferred. Judge Agresti has set an expedited schedule for this litigation, with discovery closing on March 7, 2022, and trial beginning on May 23, 2022. *See Honeywell v. NARCO Trust*, Adv. Proc. No. 21-2097, Dkt. 119 at 3-5 (Bankr. W.D. Pa. Nov. 5, 2021). The documents sought by the Subpoena are particularly relevant for Honeywell's expert reports, which must be served on February 9, 2022. *Id.* at 3. Time is short, and "the Issuing Court is more than able to act swiftly to insure that discovery attendant to the litigation pending there is managed in a way that comports with the deadlines already established by the Issuing Court." *In re Caesars Ent. Operating Co.*, 558 B.R. 156, 159 (W.D. Pa. 2016); *see also Duck*, 317 F.R.D. at 325 ("transfer is appropriate where transfer would avoid interference with a time-sensitive discovery schedule issued in the underlying action"); *Google, Inc. v. Digital Citizens Alliance*, 2015 WL 4930979, at *3 (D.D.C.

July 31, 2015) (granting motion to transfer because discovery in the underlying case has been "set at a very rapid pace" and not transferring "carries with it the potential of interfering with the discovery timeline of the underlying litigation").

In contrast to these factors that strongly favor transfer, Nicholl will not suffer prejudice from the Motion being heard by Judge Agresti. "Transferring a *motion* to the jurisdiction where the underlying litigation is pending that will require few, if any, modifications of the written submissions, does not rise to the level of unfair prejudice." *Wultz*, 304 F.R.D. at 45. Even if there is argument on Honeywell's Motion to Compel, Judge Agresti has a standing policy to allow attorneys and parties to appear by telephone or Zoom at all non-evidentiary hearings.[4] Nicholl will not need to retain new counsel as its attorneys in this district "may file papers and appear on the motion as an officer of the issuing court." Fed. R. Civ. P. 45(f). Procedures such as these were specifically contemplated to "minimize the burden that transfer could impose on nonparties." *Lipman v. Antoon*, 284 F. Supp.3d 8, 11 (D.D.C. Jan. 3, 2018) (granting motion to transfer based in part on ability to participate in hearings by telephone).

### IV. THE COURT SHOULD ORDER NICHOLL TO EXPEDITE ITS PRODUCTION OF DOCUMENTS

Finally, if Honeywell's Motion to Transfer is not granted, this Court should expedite the production of documents by Nicholl. The Bankruptcy Court for the Western District of Pennsylvania has set a highly expedited schedule for discovery, dispositive motions, and trial. Under that schedule, expert reports are due to be exchanged by February 9, 2022. In order for Honeywell's expert to make use of the Requested Documents, those documents must be produced by (at the latest) December 29, 2021—six weeks before the expert report deadline.

---

[4] *See* Updated Notice of Temporary Modification of Appearance Procedures Before Judge Thomas P. Agresti, *available at* https://www.pawb.uscourts.gov/sites/default/files/pdfs/tpa-proc-appearances.pdf.

15

"District courts enjoy broad discretion when deciding case management and scheduling matters." *See McGehee v. U.S. Dep't of Just.*, 362 F. Supp. 3d 14, 18 (D.D.C. 2019). As explained above, the law firm will suffer no undue burden if it is ordered to produce the Requested Documents and Honeywell will be severely prejudiced if it is forced to litigate the 2021 NARCO Litigation without the Requested Documents. It is therefore with good cause that Honeywell asks the Court to expedite the law firm's production of documents.

## CONCLUSION

For the foregoing reasons, Honeywell respectfully requests this Court transfer Honeywell's Motion to Compel to the Bankruptcy Court for the Western District of Pennsylvania, or compel compliance, on an expedited basis, of the Subpoena issued to Nicholl.

Dated: Washington, DC
December 6, 2021

/s/ Michael S. Nadel
Michael S. Nadel
MCDERMOTT WILL & EMERY LLC
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001
Email: mnadel@mwe.com
Tel.: (202) 756-8000
Fax: (202) 756-8087

John J. Calandra (*pro hac vice* forthcoming)
Guyon H. Knight (*pro hac vice* forthcoming)
MCDERMOTT WILL & EMERY LLC
One Vanderbilt Avenue
New York, NY 10017
Email: jcalandra@mwe.com
Email: gknight@mwe.com
Tel.: (212) 547-5400
Fax: (212) 547-5444

*Attorneys for Honeywell International Inc.*